at all. I have two arguments not to exceed 15 minutes on each side. We need to dismiss the movement represented by Mr. Hendrickson, the final movement represented by Mr. Goldberg to share his views. Mr. Hendrickson, please. I please the court. I'm Ken Hendrickson. I'm from Harlan, Kentucky. I represent Navistar, the petitioner in this action. It's a fairly simple issue. Terry Forester worked for Navistar's subsidiary, Benham Coal Company, for about five years before going to work for the federal government as a federal mine inspector. The Affordable Care Act revived an old presumption that if a person has a totally disabling respiratory impairment and 15 years of coal mine employment, the presumption is that he has pneumoconiosis. They didn't rose out of his coal mine employment. That's fairly new and that was invoked in this case. In doing so, Mr. Forester's years as a federal mine inspector were added to his years as a coal miner. Our position is, as is the government's position, is that a federal mine inspector is not a coal For one thing, he's not employed by a private employer. The act is remedial to award benefits, workers' compensation benefits, to miners who have contracted black lung, coal miners. And that's the simple answer to it. The other answer is that the benefits, and I guess they were awarded, the benefits to a federal inspector come from a different pot, so to speak. Yes, he does have that. He has those benefits too. And actually, in this case, he's receiving those benefits. This is a case that is not too unusual. A lot of federal mine inspectors did work for a coal company at one point in time before transitioning. So with respect to those years, no doubt, with a private employer, the inspector was a coal miner and engaged in coal mine employment. Our position is that once they transition into federal employment, inspecting mines, they are not coal miners and they are not engaged in coal mine employment. And that those years cannot be accumulated to invoke presumptions such as the one revived by the Affordable Care Act. So you concede that he could qualify for the benefits, but he would have to do so without the presumption. That's correct. That's correct. Now, their first argument is that you stipulated that he has 15 years experience as a coal miner. I think I stipulated 17, in fact. Okay. Did you so stipulate? In a momentary lapse, yes, I did, Your Honor. That he's a miner? Not that he was a miner. Okay. Tell me exactly what the stipulation is. I think I stipulated he had 17 years of coal mine work. Coal mine work. Okay. Coal mine work. Is that different than being a coal miner? Yes. Yes. I mean, he's been in the mines, obviously, as an inspector. But I conditioned it in a briefing before the ALJ that the stipulation was conditioned on the ALJ's finding of whether a coal mine inspector, federal inspector, is entitled to accumulate those years. So that stipulation went to the number of years? That's correct. As opposed to the function? That's correct. And as I cited in my brief, the Swift case cited by the Supreme Court said that a stipulation that really is contrary to law is inoperative. So the legal issue of his status as a miner was always contested. Is that right? I believe so. You never stipulated that, did you? I don't recall. Honestly, I don't recall. But I did raise it in briefing before the ALJ. Oh, okay. And you contested it. Yes. Well, yes. Yes. Okay. I was thinking about the hearing itself. Why should you not be bound by your stipulation? No. You say you shouldn't, but why should you not? Why should I not? Yes. Because it's contrary to law. It's contrary to law. If a federal mine inspector is not a coal miner and his work is not coal mining work, it's contrary to law. Your point is you can stipulate a fact, but you can't stipulate the law that's inferrable from that fact? If it alters the law or changes the law, it's inoperative according to the Supreme Court's decision in Swift. And I would add that the claimant did not pursue that on appeal with the Benefits Review Board. So I think it's a minor glitch in this case. The only other thing I would add is that when MSHA was created in 1977 and the enforcement responsibility was transferred from the Department of Interior to the Department of Labor, it was for this very reason. It was to segregate inspectors from production. The Department of Interior had the responsibility or the mission of promoting coal mine production, leasing federal lands, collecting royalties. There was a howl in Congress over the conflict of interest. So that's when the federal inspection regime was transferred to the Department of Labor where there wouldn't be that conflict. Inspectors actually close mines. They're not there to encourage production. They're simply there to make sure things are safe. But aren't they essential for the production of coal to have the federal government there supervising, making sure it's done safely in whatever role they do? No, they're not essential for the production of coal. You can produce coal without the safety inspectors? Coal has been produced for hundreds of years. They may not do it safely, but they can still do it. Is that the argument? I'm being a bit facetious. Their role is really an inhibiting role. It's not a functionary role in the extraction or production or preparation of coal. It is a role that is designed to put the brakes on things. And in some cases actually shut down production on a section or on an entire mine. And if I may add, as one who's dealt with them for decades, they do those things. And it's antithetical to production, what they do. They come in. They're the police. And they come in to stop things and to check things and to make sure things... And they will flat out shut down a section at the drop of a hat. So that's their role. They're not interested in production. And that's what Congress realized in 1977. A positive report from an inspector is necessary for the coal activity to go on, is it not? I've never seen a positive report from an inspector. Hypothetically, what happens is a citation is issued. And once the violation is corrected, then you get an abatement. A piece of paper that says it's been abated, if you want to call that a positive report, Your Honor. But no, I've never seen an inspector actually go in and say this mine is great. So I think my time is up, so thank you. Thank you. Thank you, sir. May it please the Court. My name is Jeff Goldberg. I'm representing the Director, Office of Workers' Compensation Programs. And as you've heard, there's really only one issue before the Court. Whether Forrester, while working as a federal mine inspector, did he engage in the extraction of preparation of coal? And he just didn't. His work didn't further coal mining. It regulated it, and it policed it. 30 U.S.C. 813A sets out the purpose of his job. It was to collect and provide information regarding safety and health, to determine whether an imminent danger exists, and to make sure mines are in regulatory compliance. In contrast, the work he did for Navistar was to keep the mine open and productive. It's the governmental oversight role versus an active mining role that takes into account the extraction and preparation of coal. As you've just heard, as a federal inspector, he could shut it down. That is not what the Navistar employee would do. His job was to find problems, not to fix them. The Fourth Circuit is the only court to address this role, and they took the position we are advocating. They spoke clearly and correctly. Federal mine inspectors do not meet the statutory definition of a miner. Their exclusive remedy for injuries incurred while working as a federal mine inspector is FICA. And contrary to Mr. Forrester's assertion, the court and cop did not base their finding on a lack of coal dust exposure. What they actually said, and I'll quote here from footnote one, Any coal dust exposure that claimants suffered while working for the federal government in Virginia cannot qualify as an injury under the Black Line Benefits Act. Mr. Goldberg, shouldn't we give some deference, the question of how much, I'll ask you, to the decisions of the Benefits Review Board? No. That seems to have held to the contrary. The board is not entitled to deference, as we point out in our brief. We, on the other hand, we administer the act, we promulgate regulations implementing it, and we interpret those regulations. Our position is not inconsistent with the act under our and your decision in Gray. It is not plainly erroneous, and it is not a litigating position, as Mr. Forrester says. We've been advocating this for at least 28 years. Do you have a regulation, though, to the effect, to this effect? Which, I'm sorry, to the effect that? That the inspectors are not miners? No, we do not. Okay, so it's not Chevron. You argue in your brief Chevron deference, but it really is Skidmore deference, isn't it? Well, I think it's actually a little step above that, more our in Gray, because we're interpreting our regulations. And our regulations, as they define miner, they do not define who isn't a miner, because that is an almost infinite list, from night watchmen to people delivering food to federal mine inspectors, as the Forest Circuit found. Okay, so you say it's Skidmore Plus. Is that what it is, or something like that? I say our, but I think Skidmore also applies in that. I thought it was odd that the ALJ and the Board of Review did not give the director any deference here. I mean, I guess they didn't, did they? They did not. I mean, do they normally not give the director's position deference, or is this just kind of an anomaly? I'd say it's perhaps a bit inconsistent in this regard. On some issues they have, and on others they haven't. And I don't know that I could point to any pattern that explains why they do or don't. But continuing, we've been advocating this for over 28 years, at least since the board's decision, I'm sorry, the Forest Circuit's decision in Eastern Associated in 1986. We advocated it before this court in Tassie, although the court didn't reach the issue. The government cannot be a responsible operator. That is in our regulations at 20 CFR 725-491F. And we say in our regulatory preamble that MSHA inspectors are not coal miners. I mean, this miner's still getting FECA, as far as we know. And that is his exclusive remedy for any injury he occurred while working as a federal mine inspector. If he was the only authority, circuit court authority is the Fourth Circuit, and I think that's an unpublished opinion, if I remember right. POP is published. Oh, that was published. Should our decision in this case be published? If you agree with us. Okay. Yeah, I think it will provide valuable guidance one way or the other. Or precedent is a better word for it. You think the precedent would be important? Yes, absolutely. I mean, these cases do not come up that often, but they do come up, and this isn't obviously not the only one we've seen. And finally, as Forrester points out, our district director in this case did find that his work as an MSHA inspector was coal mine employment, but he was simply wrong. And we are not bound by it because he was wrong, and we believe that finding was contrary to law. We challenged it as soon as the lawyers got involved, and we've continued to find it. Do you have nothing else? Thank you. Thank you for your argument, Mr. Goldberg. Mr. Sanders. Yes, Your Honor. Thank you. Steve Sanders for Mr. Forrester. I wanted to address the stipulation issue right off the bat. At the hearing, at the conclusion of the testimony, the administrative law judge states, all right, in Claimants Exhibit 1, this is on page 47 of the transcript, he says, before we wrap up, I would want to make clear that there was no stipulation on the length of coal mine employment. That was the question. And Mr. Hendrickson's answer was 17 years. Judge Sellers then said 17 years is the stipulation. All right. So that was the stipulation. Now, that was not... I guess we heard Mr. Hendrickson agree with you about that, that those were the words. Yes. I mean, so what do you take from that? Well, it wasn't contrary to law because, you see, the Benefits Review Board had consistently held that a federal mine inspector was a coal miner for purposes of the Act. There's a two-part definition, situs and function, and the Benefits Review Board had gone through the analysis and said the work of a mine safety inspector is integral to the production of coal. Therefore, the mine inspector was engaged in the extraction or preparation of coal. That's the board's holding. This court had never... Am I incorrect in recalling that that, too, is inconsistent? That the board has, on occasion, gone the other way? I don't believe the board has ever gone... You think it's... Okay. We cited board cases, and I attached an addendum to my brief with several of the board cases because they're published in Black Lung Reporter. I wanted to make sure the court could see them. But... Mr. Sanders, let me ask you this. There are certainly cases in which privately employed inspectors have been held to be miners, but all of those cases seem to say or imply that those persons do additional work for and around the mine. My question to you is this. Obviously, if a federal mine inspector says you can't operate the mine, it shuts down, at least until there's an abatement of the issues. But what work has Mr. Forrester done as a safety inspector to extract, prepare, or transport, or maintain, or construct, which is what the law seems to require? It's a little bit of a long answer, Your Honor, but if you will bear with me... It was a long question. Okay. In the case Eldon Hansen v. The Wackenhut Corporation, the board held that an individual who's employed by a coal mine operator to monitor the health and safety environment at its mines is involved in an activity founded not only on concern for the health and safety of the coal mines, but also on concern for maximizing the industrial process. We cited the quote in the brief that the board cited that was the director's position. Now, that goes along with what you've said, that an inspector or a safety official employed by industry is a miner for purposes of the act. Didn't Mr. Hansen go on to actually target that there was important to the extraction and integral to the extraction and preparation? Yes, that was the next sentence. Okay, so that gets more to those nouns that... Because of this, a mine inspector employed by a coal mine operator is engaged in a function that is necessarily related to the extraction or preparation of coal. In that instant case, claimant performed many of these duties as a mine inspector. Consequently, those duties satisfy the function test. Now, you remember that's where I started. You have a situs and a function. So the director's argument that the board quoted in the Wackenhut decision is that these are functions that are integral to the extraction and production of coal. Did the inspector in that or other cases you're prepared to cite have any duties other than inspection? I can't say from Wackenhut from the facts that I'm aware of any additional duties. I know you're perhaps thinking of the Sammons decision where the inspector was essential to safety, but he had other functions. But the point is, it was stipulated. You see, 17 years of coal mine employment was stipulated, so we didn't really try this issue. We brought out a lot of evidence as to what Mr. Forrester did in the mine, but at the point that it was presented to the ALJ and the stipulation came in, and that had been the finding of the district director's claims examiner, the Department of Labor's own official, that Mr. Forrester had 17 years of employment. So we didn't really need to prove this relation between his safety job and extraction production. I see those as different issues. I see coal mine employment not necessarily employment as a miner, and the miner's definition is very specific that you have to be in and around the coal mine, which might be employment in the industry, but also in the preparation, in the extraction or preparation of coal. It has an additional requirement besides being in and around the coal mine and employed by a coal company. So I don't see the stipulation as stipulating as to the legal definition of miner. That's all. Okay, I understand what you're saying. I don't agree with that. And, in fact, if you look back in this case, this was Mr. Forrester's third application. In his previous application, there had been an informal conference where I believe that the employer had stipulated, just to what I said, that he was a miner. It's Director's Exhibit 1-169. I guess I'd like to see the stipulation to a miner, but the ALJ wanted to know how many years we've got here. Do we have the 15 years? Yes, we have the 15 years. If you put the 5 together with whatever it is, 12 or whatever it is, yes, we're over 15 years. So I see that was the whole purpose of the stipulation. Are we over the 15 years if he's a miner? Well, that's what I said. Not the issue of whether he is a miner. That's all. No, I think that they're combined, Your Honor. It's just based on my experience litigating these cases. All right. Well, I don't see it as clear. In any event, the stipulation was based on settled law, though, that a mine inspector is a miner. That was settled law before the board. Settled law by what? By the benefits report. The board, but obviously not in the Fourth Circuit. And I think the administrative law judge did an excellent job discussing those Fourth Circuit cases and explained why he didn't think that they had. Obviously not settled law in the Sixth Circuit. Well, it had never been. We haven't decided it yet. It had never been ruled on. That's correct, Your Honor. Why are the decisions of the Benefits Review Board entitled to deference? They're not a rulemaking agency. They don't solicit public comment after notice. Why are they entitled to dispositive deference? Dispositive deference. I didn't argue that they are. I'd be happy to try to brief that for the court. But I do think that because the board has a great deal of experience in this area, that this court should look at their decisions. And in these particular cases as to whether an inspector is a miner, the board really did discuss on several occasions this function analysis. And the CITES function analysis is what the courts, not just this court but other courts, have used to determine whether a person's work in coal mine employment is work as a miner. So I wanted to also respond to the Director's argument about deference and about the speaking of the agency. In the Moore case, which is in the addendum, the board states in response, while the Director does not contend that claimant cannot be considered a miner during his employment with the federal government, he argues that the United States government cannot be held liable under the Act. So the Director's position has not been a consistent position. In 2000, when the Director amended the federal black lung regulations, they issued a definition of miner. The definition is essentially the same as the statute, except at the end of the definition they said, for purposes of this definition, the term does not include coke oven workers. So they excluded coke oven workers. Coke oven workers work generally at mine sites and they take coal and they turn it into coke. So they excluded coke oven workers. They didn't exclude federal mine inspectors or safety inspectors. So when they had a chance to speak through their regulations, they didn't change the definition. Is it possible, Mr. Sanders, that that would have been superfluous in light of the fact that the distinction, we're told, was drawn earlier in putting one group of administrative people separated, inspectors separated from production? The Director had never done that as an agency. They've taken a litigation position, but it's not been consistent, as the Moore quote shows. The Wackenhut decision shows that the function of a safety inspector, such as Mr. Forrester. Directors of the agency, could I just ask a tangential question? I take it that those change with the political winds? I'm not sure. Or are they pros? Are they people who are longstanding employees of the federal government or are they people who are appointed by various political parties? The Director is longstanding. They're permanent employees. The Director of OWC was a permanent employee. Has the Director's litigation position been consistent? Well, it changed from Moore, and the Moore decision before the Board, the Board said, as I read a minute ago, that the Director does not contend that claimant cannot be considered a minor. I think that was 1980. Has it been consistent since 1980? I'm not sure. I don't know of any cases that are different. They raised this issue before the Fourth Circuit in a case around 1990, and the Fourth Circuit did not address their argument that a mine inspector is not a minor, so I think at least going back to that time. Okay. I thought the original question was the degree of deference that the Director's position is entitled to, and they argue today it's Skidmore plus deference. Well, I don't see that there's ambiguity in the statute. An individual who worked in the extraction or preparation of coal, and then in their regulation they use that same definition, and in the preamble, which I know is not law, but they say this is intended to give a very expansive definition of minor, and there is a rebuttable presumption that if you work at a mine, you are a minor. That's their discussion in the preamble of the definition of minor. How do you distinguish the Falcon decision from this court in 1989, which seemed to say the function test also encompasses workers performing duties incidental to the extraction or preparation of coal, but those duties must be an integral or necessary part of the coal mining process? Tell me, if you would, what Mr. Forrester did in his job as an inspector that had anything to do with the extraction or preparation of coal, integral and necessary part of the coal mining process, other than the fact that he could shut it down if he had a negative report. Well, he had to go to the mines. It was required that a mine inspector visit the mines four times. That's the law. And if the mines don't get an inspection four times a year, then they are out of compliance with the law. When he gets to the mine, he starts looking to see that the operator is complying with all of the required safety and health standards. So he's measuring the ventilation. He's testing the quality of the roof support so that there would be adequate support of the mine roof. He's looking at the accumulations of dust to see that there's not too much dust that could be explosive. He goes up to the face. He sees how the miners are cutting the coal. Are they in compliance with the plan? The law requires MSHA to approve. Are the cuts too deep? Are the cuts too wide? How are they doing all of these things? He makes sure that the necessary safety equipment is on the section. All of those things are absolutely essential to the safe production of coal. When Congress passed the Coal Mine Safety Act, and they gave... The word safe is not used there in the Falcon case, though. It says extraction and production. I think you were asking me about the integral or necessary, and I'd say production, it's integral that it must be done safely. That's what it is. You have to have these inspections. They're required by law. Congress, when it set up this statute, it talked about the things that the director talked about in Wackenhut, which is this is essential to the production of coal. We must mine coal safely. What about opposing counsel's statement that Congress acted to prevent an inherent conflict between the drive to produce more coal on the one hand and the imperative to do it safely on the other? There is some in the legislative history about that, but I don't see how that enters into this case at all. The question is whether doing extraction and production, do you have to do it safely? I believe this Court should speak to that question, and we should say it's integral to the extraction and production of coal that we have mine safety inspectors on the job doing their job. But that's... Mr. Sanders, do you think you can prove your case, your entitlement to benefits, without the presumption? Yes, I could perhaps, Your Honor. I don't know for sure if I would. The judge employed the presumption, and without it... If we were to disagree with you, you would want a remand to prove that you're actually entitled to benefits as a matter of fact. Yes, Your Honor. Are there any other questions? It appears there are no further questions. All right. Thank you, Your Honor. I wonder, did either of you save more time? No. All right. Thank you. We appreciate your arguments. We'll consider this case carefully and issue an opinion in due course. Thank you. We needn't call the other cases. It's okay to adjourn court, please.